1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10                  FOR THE DISTRICT OF OREGON

11                     PORTLAND DIVISION

12  JOHN EMMINGHAM,                    )
                                       )
13              Plaintiff,             )
                                       )
14       v.                            )       No. CV-08-6329-HU
                                       )
15  PER MICHAEL SELTZER, MICHAEL       )
    HATHAWAY, Counselor, Oregon        )
16  State Penitentiary Minimum         )
    (OSPM), THOMAS WRIGHT,             )
17  Facility Manager, OSPM, CARLA      )
    TUPOU, Assistant Superinten-       )       FINDINGS & RECOMMENDATION
18  dent, R. OGDEN, Security           )
    Manager, OSCI, GREGORY HUNTER,)
19  Library Coordinator, OSCI,         )
                                       )
20              Defendants.            )
    _____)
21

22  John Emmingham
    6813512
23  Snake River Correctional Institution
    777 Stanton Blvd.
24  Ontario, Oregon 97914

25       Plaintiff Pro Se

26  Per Michael Seltzer
    19563 Lost Lake Drive
27  Bend, OR 97702

28       Defendant Pro Se


1 - FINDINGS & RECOMMENDATION

John R. Kroger
ATTORNEY GENERAL
Kristin A. Winges
ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

    Attorney for Defendants Hathaway, Wright,
    Tupou, Odgen, & Hunter

HUBEL, Magistrate Judge:

    Plaintiff John Emmingham, currently an inmate of the Oregon
Department of Corrections (ODOC), housed at the Snake River
Correctional Institution (SRCI), brings this 42 U.S.C. § 1983
action against Per Michael Seltzer, an individual, and several
employees of the ODOC (ODOC Defendants).  Plaintiff's claims are
described more fully below.  The allegations are generally based on
the ODOC employees ordering plaintiff to stop sending mail to
Seltzer, the order having been issued in response to a complaint by
Seltzer that he had received threatening and unwanted mail from
plaintiff.

    Seltzer moves for summary judgment on the claims against him.
The ODOC Defendants separately move for summary judgment on the
claims against them.[1]  For the reasons explained below, I recommend
that Seltzer's motion be granted, and that the ODOC Defendants'
motion be granted in part and denied in part.

BACKGROUND

    In April 2006, after plaintiff was released from prison,
Seltzer invited plaintiff to live as a guest in Seltzer's home.
Seltzer Declr. at ¶ 6.  Selzter spoke to plaintiff's probation

_____

    [1]  Judge Mosman previously dismissed defendant Ogden from
the case in an August 18, 2009 Order (docket #15).

2 - FINDINGS & RECOMMENDATION

officer and parents and established certain rules for plaintiff to live with him, including attending twelve-step meetings, finding a twelve-step sponsor, and participating in "constructive means to living." Id. Plaintiff, however, was apparently arrested and prosecuted for burglarizing Seltzer's neighbor's home and stealing opiate narcotics. Id. at ¶¶ 6, 7. He was sent back to prison. Id. at ¶ 7.

Plaintiff then sent mail to Seltzer from prison. Id. at ¶ 2. Seltzer describes the mail as being offensive, and as containing personal attacks, untrue accusations, and threats against him. Id. In response, Seltzer contacted officials at the prison to request that plaintiff be restricted from contacting Seltzer. Id.

Plaintiff denies that mail sent to Seltzer was offensive, and denies that it contained personal attacks, untrue accusations, or threats. Pltf's Declr. in Opp. to Seltzer's SJ Mtn at ¶ 3.

Seltzer is not employed by any governmental agency, be it local, state, or federal, including the Oregon State Police or the ODOC. Seltzer's Declr. at ¶¶ 1, 4. He contacted the ODOC employees about the mail as a private citizen with no connection to the State of Oregon. Id. at ¶ 2. Seltzer's only interaction with the ODOC Defendants in this case was via telephone when he called to inquire about what he considered to be harassment of him by plaintiff. Id. at ¶ 23. He has never met any of the ODOC Defendants face to face, he is not friends with any of them, and is not related to any of them. Id. at ¶¶ 21, 22, 24.

According to the ODOC Defendants, plaintiff was housed at the Oregon State Penitentiary Minimum facility (OSPM), from February 20, 2008, until June 25, 2008. Hathaway Declr. at ¶ 3; Attchmt 1

3 - FINDINGS & RECOMMENDATION

1    to Hathaway Declr. (plaintiff's housing history).  On March 5,
2    2008, Hathaway, an OSPM correctional counselor, issued an Outgoing
3    Mail Restriction to plaintiff, indicating that mail to Seltzer was
4    unwanted because it involved harassment.  Hathaway Declr. at ¶ 4
5    (noting mail restriction issued because plaintiff was sending
6    unwanted, harassing mail to Seltzer); Attchmt 2 to Hathaway Declr.
7    (outgoing mail restriction form).  See Or. Admin. R. §§ (OAR) 291-
8    131-0021 (rule allowing ODOC to prohibit an inmate from sending
9    unwanted mail to a particular person).  Hathaway states that
10   Seltzer contacted the facility and provided sufficient information
11   to justify issuance of the outgoing mail restriction.  Hathaway
12   Declr. at § 8.

13       According to Wright, who was the OSPM Facility Manager at the
14   time, Wright knew that plaintiff was trying to sue Seltzer,
15   plaintiff's former roommate, and that Seltzer had written to
16   plaintiff saying he did not want any contact with plaintiff once
17   plaintiff was paroled.  Wright Declr. at ¶ 7.  At some point,
18   Wright received a call from Seltzer asking what ODOC could do about
19   a threatening letter Setlzer received from plaintiff.  Id.

20       The timing of Wright's conversation with Seltzer is unclear.
21   Hathaway's declaration suggests that it was after Hathaway issued
22   the outgoing mail restriction and that Seltzer's call to Wright was
23   prompted by Seltzer continuing to receive mail from plaintiff.
24   Hathaway Declr. at ¶ 6.  Wright told Seltzer to send Wright a
25   letter and he would issue a mail restriction notice to plaintiff
26   preventing plaintiff from writing to Seltzer.  Wright Declr. at ¶
27   7.  However, plaintiff was transferred from OSPM before Wright
28   could issue an outgoing mail restriction.  Id. at ¶ 7.

4 - FINDINGS & RECOMMENDATION

1    On June 25, 2008, Wright authorized plaintiff's transfer from
2    OSPM to the Oregon State Correctional Institution (OSCI).  Id. at
3    ¶ 8; Attchmt 2 to Wright Declr.  According to Wright, plaintiff
4    complained to him about mental health issues and requested to see
5    a  Behavioral  Health  Services  (BHS)  specialist  regarding  his
6    medications  for  anxiety.  Id. at  ¶ 8.  Wright  states  that  the
7    medication involved is a narcotic and OSPM medical staff cannot
8    prescribe or issue this type of medication.  Id.  OSPM does not
9    have  full-time  medical  staff  or  BHS  providers.  Id.  Wright
10   authorized plaintiff's transfer to OSCI so he could access medical
11   staff and BHS staff, including meeting with a BHS specialist to
12   renew and receive anxiety medication.  Id.

13   Additionally, Wright explains, OSCI is a pre-release facility.
14   Id. at ¶ 9.  At the time of his transfer, plaintiff had less than
15   four years to his release.  Id.  OSCI also has a law library where
16   plaintiff could pursue his legal work.  Id. at ¶ 10.  Transferring
17   plaintiff to OSP was not an option because of a conflict with
18   another person at that facility.  Id.

19   On September 4, 2008, after plaintiff's transfer to OSCI,
20   Wendy Hatfield, Executive Assistant to the OSCI Superintendent, and
21   OSCI's  Public  Information  Officer,  issued  an  outgoing  mail
22   restriction to plaintiff because he was sending unwanted, harassing
23   mail to Seltzer.  Hatfield Declr. at ¶ 4.  She states that Seltzer
24   contacted the ODOC and "provided sufficient information to justify
25   the Outgoing Mail Restriction."  Id. at ¶ 8.

26                              STANDARDS
27   Summary judgment is appropriate if there is no genuine issue
28   of material fact and the moving party is entitled to judgment as a

5 - FINDINGS & RECOMMENDATION

matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the
initial responsibility of informing the court of the basis of its
motion, and identifying those portions of "'pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact."  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the
absence of a material and triable issue of fact,' 'the burden then
moves to the opposing party, who must present significant probative
evidence tending to support its claim or defense.'"  Intel Corp. v.
Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)
(quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th
Cir. 1987)).  The nonmoving party must go beyond the pleadings and
designate facts showing an issue for trial.  Celotex, 477 U.S. at
322-23.

The substantive law governing a claim determines whether a
fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as
to the existence of a genuine issue of fact must be resolved
against the moving party.  Matsushita Elec. Indus. Co. v. Zenith
Radio, 475 U.S. 574, 587 (1986).  The court should view inferences
drawn from the facts in the light most favorable to the nonmoving
party.  T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to
the existence of a material issue of fact implausible, that party
must come forward with more persuasive evidence to support his
claim than would otherwise be necessary.  Id.; In re Agricultural

6 - FINDINGS & RECOMMENDATION

1  Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990);

2  California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,

3  Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

4                          DISCUSSION

5  I.  Plaintiff's Claims

6       In his Amended Complaint, plaintiff brings several claims,

7  some of which were subsequently dismissed in an August 18, 2009

8  Order by Judge Mosman.  Although a bit unclear and repetitive,

9  plaintiff appears to have brought the following claims in his

10 Amended Complaint:

11      A.  42 U.S.C. § 1983 Claims Against Seltzer

12          (1) a violation of plaintiff's First Amendment rights

13 based on Seltzer having forced the ODOC Defendants to prevent

14 plaintiff from sending mail to Seltzer, including service of a

15 summons and complaint in a state tort case;

16          (2) a violation of plaintiff's Sixth Amendment right of

17 access to the courts based on the same facts;

18          (3)  a violation of plaintiff's Fourteenth Amendment

19 right to send legal mail and to litigate;

20          (4) a violation of plaintiff's Fifth Amendment rights to

21 equal protection; and

22          (5) claims of retaliation based on the First Amendment,

23 Sixth Amendment, Fourteenth Amendment, and Sixth Amendment.

24 Am. Compl. at ¶¶ 172-189.

25      B.  42 U.S.C. § 1985(3) Conspiracy Claims Against Seltzer

26      Plaintiff  alleges  that  Seltzer  conspired  with  the  ODOC

27 Defendants to violate various Fifth Amendment rights in violation

28 of section 1985(3).  Id. at ¶¶ 190-198.

7 - FINDINGS & RECOMMENDATION

/ / /

C.   State Law Violations as Basis for Federal
Constitutional Claims Against Seltzer

Plaintiff alleges that Seltzer violated various rights under Oregon statutes and the Oregon Constitution which in turn, constitute a violation of various federal constitutional rights including the Fourteenth, Sixth, and First Amendments.  He also alleges that Seltzer abused the relevant OAR, which in turn he contends constitutes a violation of plaintiff's Fourteenth Amendment due process rights by causing the ODOC Defendants to prevent plaintiff from sending mail.  Id. at ¶¶ 177, 199-204.

D.   Supplemental State Claims Against Seltzer

Plaintiff brings supplemental state claims of negligent infliction of emotional distress, invasion of privacy, and negligence.

E.   Claims Against the ODOC Defendants

With some slight variation, plaintiff brings the same claims brought against Seltzer, against the ODOC Defendants.

F.   Judge Mosman's August 18, 2009 Order (Docket #15)

The August 18, 2009 Order was issued in regard to the Amended Complaint.  Judge Mosman first noted that in a prior Order, issued December 5, 2008 )docket #6), he dismissed plaintiff's original Complaint which had raised claims alleging that Seltzer had denied plaintiff his constitutional right of access to the courts, and had violated his due process rights.  Aug. 18, 2009 Ord. at pp. 1-2; Dec. 5, 2008 Ord. at pp. 2-3.  In the August 18, 2009 Order, Judge Mosman noted that the access to courts claims had been previously dismissed in his prior order because the constitutional right of access to the courts does not extend to filing a state tort action.

8 - FINDINGS & RECOMMENDATION

1   Aug. 18, 2009 Ord. at p. 1 (citing Simmons v. Sacramento County

2   Superior Ct., 318 F.3d 1156, 1160 (9th Cir. 2003)).  Thus, to the

3   extent plaintiff had re-alleged the access to court claims in his

4   Amended Complaint, they were dismissed.  Id. at pp. 1-2.

5       Next, Judge Mosman dismissed all of plaintiff's equal

6   protection claims due to plaintiff's failure to allege that any of

7   the defendants acted with an intent or purpose to discriminate

8   against plaintiff based upon his membership in a protected class.

9   Id. at p. 2.  Finally, he dismissed all claims against named

10  defendant "R. Ogden," an ODOC Assistant Superintendent, for failure

11  to allege how Ogden violated plaintiff's rights.    Id.

12  II.  Seltzer's Motion for Summary Judgment

13      Seltzer argues that he is entitled to summary judgment on the

14  section 1983 claims because he was not a "state actor."  I agree.

15      To prevail in a section 1983 claim, a plaintiff must show the

16  deprivation of a right secured by the Constitution and that the

17  defendant "act[ed] under color of state law."  West v. Atkins, 487

18  U.S. 42, 48 (1988); 42 U.S.C. § 1983.  A section 1983 claim may be

19  brought against a private party when that party "is a willful

20  participant in joint action with the State or its agents."  Kirtley

21  v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (internal quotation

22  omitted).

23      As explained in a 2001 case, "state action may be found if,

24  though only if, there is such a 'close nexus between the State and

25  the challenged action' that seemingly private behavior 'may be

26  fairly treated as that of the State itself.'"  Brentwood Acad. v.

27  Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)

28  (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351

9 - FINDINGS & RECOMMENDATION

1  (1974)).

2      While technically the "under color of state law" requirement
3  for section 1983 claims is distinct from "state action" required
4  for Fourteenth Amendment claims, "the two inquiries are closely
5  related." Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997);
6  see also George v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1229
7  (9th Cir. 1996) ("In § 1983 actions, 'color of state law' is
8  synonymous with state action.").

9      Here, the undisputed evidence in the record is that Seltzer,
10  acting as a private citizen, notified ODOC employees of mail he
11  received from plaintiff that Seltzer considered harassing and
12  threatening.  He requested that ODOC employees prevent plaintiff
13  from sending him mail.  Apparently, he made this request more than
14  once.  No evidence suggests that Seltzer had any other role in
15  issuing the mail restriction.  Seltzer's actions are not enough to
16  show that he acted jointly with the state, or in any other way
17  acted under color of state law.  Notably, while plaintiff's Amended
18  Complaint alleges that Seltzer conspired with the ODOC Defendants
19  to issue the outgoing mail restriction, plaintiff fails to submit
20  any facts opposing Seltzer's motion for summary judgment suggesting
21  that Seltzer did anything more than report his complaint to the
22  ODOC employees.

23      While private persons may act "under color of law" for section
24  1983 purposes by jointly engaging with state officials in the
25  challenged action, the Ninth Circuit has previously held that
26  merely complaining to the police does not convert a private party
27  into a state actor. Collins v. Womancare, 878 F.2d 1145, 1155 (9th
28  Cir. 1989) (noting also that execution by a private party of a

10 - FINDINGS & RECOMMENDATION

1    sworn complaint which forms the basis of an arrest is not enough to

2    convert the private party's acts into state action).

3         The undisputed facts here are indistinguishable from those

4    cases where a private party has made a report or complaint to the

5    police.  Thus, plaintiff fails to create an issue of fact on this

6    issue.  Seltzer's summary judgment motion should be granted as to

7    all the section 1983 claims brought against him.

8         As to the section 1985(3) claims, I consider these to have

9    been dismissed by Judge Mosman in his August 18, 2009 Order.  As

10   noted above, Judge Mosman dismissed all of plaintiff's claims based

11   on an equal protection theory because plaintiff failed to allege

12   that any of the defendants acted with an intent or purpose to

13   discriminate against plaintiff based upon his membership in a

14   protected class.  To prevail on a section 1985(3) claim, plaintiff

15   must show class-based animus.  Griffin v. Breckenridge, 403 U.S.

16   88, 102 (1971) (to support a cause of action arising from a private

17   conspiracy in violation of § 1985(3), "there must be some racial,

18   or perhaps otherwise class-based, invidiously discriminatory animus

19   behind the conspirators' action"); Caldeira v. County of Kauai, 866

20   F.2d 1175, 1182 (9th Cir. 1989) (claims under § 1985(3) require a

21   showing of class-based animus).  Judge Mosman's August 18, 2009

22   Order dismissing all of the equal protection claims because of the

23   lack of an allegation of class-based animus, included the dismissal

24   of the section 1985(3) claims.

25        Even if the section 1985(3) claims were still in the case,

26   Seltzer states in his declaration that he has never been involved

27   with other people in a conspiracy and that no conspiracy to violate

28   plaintiff's rights has ever existed.  Seltzer Declr. at ¶¶ 13, 18.

11 - FINDINGS & RECOMMENDATION

1   In response, plaintiff provides no evidence of any conspiratorial
2   act or of any class-based animus as a motive for Seltzer's actions.
3   Rather, plaintiff simply states that his rights were violated as
4   alleged in his Amended Complaint and the attachments to his Amended
5   Complaint, and that a conspiracy exists between Seltzer and the
6   other defendants.   Pltf's Declr. in Sup. of Pltf's Resp. to
7   Seltzer's MSJ at ¶¶ 3, 4.

8        Conclusory allegations are insufficient to create an issue of
9   fact.  E.g., United States v. Wilson, 881 F.2d 596, 601 (9th Cir.
10  1989) (self-serving and conclusory declarations of fact are
11  insufficient to raise a genuine issue of fact); Taylor v. List, 880
12  F.2d 1040, 1045 (9th Cir. 1989) (summary judgment motion cannot be
13  defeated by relying solely on conclusory allegations unsupported by
14  factual data).   None of the attachments to plaintiff's Amended
15  Complaint contain any facts suggesting that Seltzer acted with a
16  class-based animus.   Thus, even if the section 1985(3) claims
17  remain in the case, plaintiff fails to create an issue of fact
18  sufficient to sustain the claims as to Seltzer.   Seltzer's motion
19  for summary judgment should be granted as to the section 1985(3)
20  claims against him.

21       Finally, as to the three supplemental tort claims brought by
22  plaintiff against Seltzer, I recommend that summary judgment be
23  granted to Seltzer.   First, while there are limited circumstances
24  under which a negligent infliction of emotional distress claim may
25  be recognized in Oregon, none of them are apparent in the record
26  here.  Navarette v. Nike, Inc., No. 05-1827-AS, 2007 WL 221865, at
27  *4 (D. Or. Jan. 26, 2007).

28       Second, there is no evidence in the record to support an
12 - FINDINGS & RECOMMENDATION

1  invasion of privacy claim against Seltzer.  Finally, to prove a

2  claim for negligence under Oregon law, plaintiff must establish the

3  following elements:

> (1) that defendant's conduct caused a foreseeable risk of
> harm, (2) that the risk is to an interest of a kind that
> the law protects against negligent invasion, (3) that
> defendant's conduct was unreasonable in light of the
> risk, (4) that the conduct was a cause of plaintiff's
> harm, and (5) that plaintiff was within the class of
> persons and plaintiff's injury was within the general
> type of potential incidents and injuries that made
> defendant's conduct negligent.

9  Solberg v. Johnson, 306 Or. 484, 490-91, 760 P.2d 867, 870 (1988)

10 (citing Fazzolari v. Portland School Dist. No. 1J, 303 Or. 1, 17-

11 18, 734 P.2d 1326, 1336 (1987)).

12     Here, plaintiff's negligence claim fails because he fails to

13 show that Seltzer's actions were the cause of any harm to

14 plaintiff.  As recited above, there are no facts in the record

15 showing that Seltzer did anything more than complain to ODOC

16 employees about mail he was receiving from plaintiff, and request

17 ODOC employees to stop plaintiff from sending the mail.

18     Additionally, to prevail on a claim based in negligence,

19 plaintiff must articulate that the defendant's allegedly negligent

20 actions caused the plaintiff some type of harm, be it emotional,

21 physical, or economic.  To the extent plaintiff's negligence claim

22 is based on emotional harm, I have already rejected that theory

23 above.  He neither alleges nor proves the existence of any physical

24 harm.

25     As to economic harm, there is no apparent economic harm

26 alleged, and importantly, given that this is a summary judgment

27 motion, there is no evidence of economic damage in the summary

28 judgment record.  To survive Selzter's motion on this claim,

13 - FINDINGS & RECOMMENDATION

1  plaintiff must at least create an issue of fact as to the existence
2  of economic harm allegedly caused by Seltzer's alleged negligence.
3  He fails to do so.

4       Finally, even if there were some type of economic harm
5  apparent in the record, "under Oregon law 'one ordinarily is not
6  liable for negligently causing a stranger's purely economic loss
7  without injuring his person or property' even if the harm is a
8  foreseeable consequence of negligent conduct." Anderson v. Atlantic
9  Recording Corp., No. CV-07-934-HU, 2010 WL 1798441, at *11 (D. Or.
10 May 4, 2010) (quoting Onita Pac. Corp. v. Trustees of Bronson, 315
11 Or. 149, 159, 843 P.2d 890 (1992)); see also Vasconcellos v. Wells
12 Fargo Home Loan Mortgage, Inc., No. CV-10-757-KI, 2010 WL 3732232,
13 at *5 (D. Or. Sept. 20, 2010) ("in Oregon, negligent liability for
14 purely economic harm must be predicated on some duty beyond the
15 common law duty to exercise reasonable care to prevent foreseeable
16 harm") (citing Oregon Steel Mills, Inc. v. Coopers & Lybrand, 336
17 Or. 329, 341, 83 P.3d 322 (2004)).  No facts in the record support
18 a negligence claim against Seltzer for economic harm.

19      I recommend that summary judgment be granted to Seltzer on
20 plaintiff's supplemental tort claims.

21 III.  ODOC Defendants' Motion for Summary Judgment

22      Defendants Hathaway, Wright, Tupou, and Hunter move for
23 summary judgment on all of the remaining claims against them.  They
24 argue that the undisputed facts indicate that they did not violate
25 plaintiff's constitutional rights and that they are entitled to
26 qualified immunity.  They also argue that without a waiver of
27 sovereign immunity, any supplemental state claims must be
28 dismissed.

14 - FINDINGS & RECOMMENDATION

A.  Section 1983 Claims re: Mail Restriction

As the ODOC Defendants note, Judge Mosman previously dismissed plaintiff's access to courts claims because the right of access to the courts does not extend to filing a state tort action against a private citizen.  Aug. 18, 2009 Ord. at pp. 1-2 (citing Simmons, 318 F.3d at 1160).  Defendants contend that the "multitude" of plaintiff's First Amendment claims are all, in essence, access to courts claims and thus, have been dismissed by Judge Mosman.

The undisputed facts establish that the only mail plaintiff sent to Seltzer, or desired to send, was mail related to a tort case plaintiff intended to file, or had filed, against Seltzer in Deschutes County Circuit Court.  Am. Compl. at ¶ 37; Pltf's Declr. in Opp. to SJ at ¶ 1 (plaintiff sent a Notice of Intent to Sue to Seltzer in December 2008), ¶ 6 (plaintiff sent a copy of the Complaint and Summons he had filed in Deschutes County Circuit Court, to Seltzer in May 2008), ¶ 14 (all the mail sent by plaintiff to Seltzer contained only legal mail and "legal mail" was written on the outside of all such mail).  I agree with defendants that Judge Mosman has dismissed any "access to courts" First Amendment or Fourteenth Amendment due process claims based on the restriction of plaintiff's ability to send this mail to Seltzer.  Aug. 18, 2009 Ord. at pp. 1-2; see also Dec. 8, 2008 Ord. at pp. 4-5 (dismissing the same claims on same basis); Hebbe v. Pliler, No. 07-17265, 2010 WL 4673711, at *3 (9th Cir. Nov. 19, 2010) (constitutional right to court access is "grounded in the First Amendment right to petition and the Fourteenth Amendment right to due process").  Summary judgment should be granted to the ODOC Defendants on any "access to courts" claims.

15 - FINDINGS & RECOMMENDATION

But, plaintiff appears to separately raise a free expression First Amendment claim in addition to his "access to courts" claims. That is, his Amended Complaint suggests that he contends that the outgoing mail restriction violated not only his right to access the courts, but his more general First Amendment right to express himself.

Prisoners have a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). "However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Id. Legitimate penological interests include "security, order, and rehabilitation." Id.

Here, while plaintiff contests the description of the mail he sent to Seltzer as threatening or harassing, there is no dispute that it was unwanted by Seltzer and that Seltzer considered the notice of plaintiff's intent to sue him, and a copy of plaintiff's state tort complaint against him, accompanied by a summons, to be harassment. There is also no dispute that Seltzer contacted the ODOC to request that the mail to him by plaintiff be stopped.

Many courts have recognized that a prison has a legitimate, penological interest in protecting the public from harassment by prohibiting an inmate from sending mail considered harassing. E.g., Berdella v. Delo, 972 F.2d 204, 209 (8th Cir. 1992) (government's interest in protecting the public from harassment by inmates justifies prohibiting an inmate from sending mail to persons who have affirmatively requested that mail not be received

16 - FINDINGS & RECOMMENDATION

1  from an inmate); <u>Jones v. Diamond</u>, 594 F.2d 997, 1014 (5th Cir.
2  1979) (validating the use of negative mail lists and stating "jail
3  officials may employ a 'negative mail list' to eliminate any
4  prisoner correspondence with those on the outside who affirmatively
5  indicate that they do not wish to receive correspondence from a
6  particular prisoner"); <u>Tompkins v. Department of Corrections</u>, No.
7  1:08CV322-01-MU, 2009 WL 995573, at *1 (W.D.N.C. Apr. 14, 2009)
8  (prison had legitimate penological interest in protecting the
9  public from harassment by inmates by prohibiting an inmate from
10 sending letters to persons who requested that they do not wish to
11 receive mail from a particular inmate).

12      Additionally, the evidence in the record indicates that the
13 restriction was no broader than necessary to protect Selzter
14 because plaintiff had no limits on his ability to mail his state
15 tort complaint directly to the Deschutes County Circuit Court or to
16 communicate directly with a private process server or the Sheriff.
17 The only restriction was on mail to Seltzer.

18      Plaintiff's subjective opinion that the mail was not
19 threatening or harassing is irrelevant in light of Seltzer's
20 request that the mail be stopped.  Clearly, Seltzer concluded that
21 being named a defendant by plaintiff in a state tort lawsuit was a
22 form of harassment.  Moreover, according to the undisputed facts in
23 the summary judgment record, although Seltzer was not the victim of
24 plaintiff's burglary crime for which Seltzer states plaintiff was
25 convicted, plaintiff appears to have taken advantage of Seltzer's
26 offer of housing, making Selzter a victim of plaintiff's in a
27 sense, and providing a basis for Seltzer's conclusion that the mail
28 from plaintiff was harassing.

17 - FINDINGS & RECOMMENDATION

1    Finally, plaintiff complains that ODOC officials acted
2    inappropriately because the OAR requires Seltzer to have filed a
3    written complaint and the summary judgment record fails to
4    establish that Seltzer ever contacted the ODOC Defendants in
5    writing. I agree with plaintiff regarding the evidence in the
6    record, but, a violation of a state regulation does not provide a
7    basis for a section 1983 claim. Moreland v. Las Vegas Metro.
8    Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998) (state law
9    violations do not, on their own, give rise to liability under
10   section 1983); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367,
11   370-71 (9th Cir. 1996) ("Section 1983 limits a federal court's
12   analysis to the deprivation of rights secured by the federal
13   "'Constitution and laws'"). Here, the First Amendment does not
14   require that the mail restriction be initiated by Seltzer in
15   writing. It is enough that Seltzer contacted the ODOC employees to
16   request that the mail to him be stopped.

17   I recommend that summary judgment be granted to the ODOC
18   Defendants on all of plaintiff's claims challenging the mail
19   restriction order, whether based on an access to courts theory or
20   a free expression theory.

21   B. Section 1985(3) Claims

22   As with the section 1985(3) claims against Seltzer,
23   plaintiff's section 1985(3) claims against the ODOC Defendants
24   require a showing of class-based animus. As explained above, I
25   consider these claims to be out of the case as a result of Judge
26   Mosman's August 18, 2009 Order dismissing all claims based on an
27   equal protection theory because plaintiff failed to allege that any
28   of the defendants acted with an intent or purpose to discriminate

18 - FINDINGS & RECOMMENDATION

1  against plaintiff based upon his membership in a protected class.

2      Even if the section 1985(3) claims remain in the case, the

3  ODOC Defendants are entitled to summary judgment on those claims

4  because plaintiff fails to create an issue of fact as to the

5  existence of a conspiracy or his membership in a protected class.

6      In his declaration, Hathaway states that he issued the mail

7  restriction to plaintiff because Seltzer contacted the facility and

8  provided sufficient information to justify the restriction.

9  Hathaway Declr. at ¶¶ 4, 8. Hathaway expressly states that he was

10 not coerced into issuing the restriction as plaintiff alleges in

11 his Amended Complaint. Id. at ¶ 8. Wright never actually issued

12 a mail restriction. Hatfield, not a named defendant, states that

13 she issued an outgoing mail restriction to plaintiff based on

14 Seltzer's contact with ODOC and his provision of sufficient

15 information to justify the restriction. Hatfield Declr. at ¶¶ 4,

16 8. Hatfield also expressly states that she was not coerced into

17 issuing the restriction as plaintiff alleges in his Amended

18 Complaint. Id. at ¶ 8.

19     In response, plaintiff submits a declaration (docket #64) in

20 which he makes no statements regarding any efforts by the ODOC

21 Defendants to conspire with Seltzer, or each other, to restrict his

22 outgoing mail to Seltzer. Plaintiff states that Seltzer called

23 Hathaway, Wright, Tupou, and/or other defendants in an effort to

24 get them to frustrate plaintiff's efforts to continue legal action

25 against Seltzer. Pltf's Declr. in Opp. to ODOC Defts' SJ Mtn at ¶

26 8. He further states that the these individuals issued the

27 outgoing mail restriction on the basis of Setlzer's calls to them.

28 Id. at ¶ 11. He alleges that defendants never objectively verified

19 - FINDINGS & RECOMMENDATION

that the mail plaintiff was sending was threatening or harassing mail because Seltzer never actually sent defendants photocopies of the mail. Id. at ¶¶ 12, 13. But, he also acknowledges that he wrote "legal mail" on the outside of the mail he sent to Seltzer and that Hathaway, Tupou, Wright, and Hatfield all knew that it was legal mail. Id. at ¶ 15.

Plaintiff fails to explain how he has personal knowledge of why Seltzer called defendants, or why defendants acted the way they did. Furthermore, these statements do not show that any of the defendants conspired with each other to issue the outgoing mail restriction. Although Seltzer complained to ODOC employees about the mail he received, plaintiff's statements reveal no collusion, discussion, plan, agreement, or any other acts taken by any of the defendants in furtherance of an alleged conspiracy. Additionally, plaintiff offers no other affidavits, declarations, or documentary evidence containing any such facts. Thus, plaintiff's section 1985(3) claim initially fails because of his failure to create an issue of fact regarding a conspiracy. United Broth. of Carpenters and Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983) (first element that must be alleged and proved in support of a claim under section 1985 is a conspiracy); Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998) (to establish a § 1985(3) conspiracy claim, the plaintiff must show: "[1] the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; [2] an act in furtherance of the conspiracy; and [3] a resulting injury.").

In addition to the element of conspiracy, plaintiff must show that defendants were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

20 - FINDINGS & RECOMMENDATION

conspirators' action." <u>Griffin</u>, 403 U.S. at 102.  Plaintiff's
declaration does contain some statements regarding plaintiff's
alleged mental and physical disabilities.  He states that his ODOC
medical records show that he is mentally and physically disabled.
Pltf's Declr. at ¶ 34.  He further states that "[t]hrough my
interactions, conversations, and associations with Defendants, it
is my belief that Defendants acted as I described in my Complaints
(e.g. retaliation, discrimination, interfering with my
constitutional rights) due to my physical and mental
disabilities[.]"  <u>Id.</u> at ¶ 35.  He also asserts that defendants
acted due to his "institutionalization, socioeconomic status, lack
of education and wealth, being a prisoner and a practitioner of the
religion of Buddhism."  <u>Id.</u>

Other than religion, none of the attributes or conditions
plaintiff ascribes to himself is a protected class for purposes of
section 1985(3), including physical and mental disabilities.
<u>Chasse v. Humphreys</u>, No. CV-07-189-HU, 2008 WL 4846208, at *3-5 (D.
Or. Nov. 3, 2008) (disability not a protected class for section
1985(3)).

Whether First Amendment religious rights are protected under
section 1985(3) appears to be an open question in the Ninth
Circuit.  <u>Peloza v. Capistrano Unified Sch. Dist.</u>, 37 F.3d 517, 524
* n.8 (9th Cir. 1994) (refusing to decide if Establishment Clause
protected by section 1985(3) and citing decisions from other courts
both recognizing freedom of religion as a basis for section 1985(3)
claims, and refusing to recognize such a claim); <u>Scott v.
Rosenberg</u>, 702 F.2d 1263, 1269 (9th Cir. 1983) (recognizing
possibility there might be a claim based on a conspiracy to violate

21 - FINDINGS & RECOMMENDATION

1   a protected right of freedom of religion, but not deciding the
2   question).

3       Assuming for the purposes of this decision only that the Ninth
4   Circuit would recognize such a claim, plaintiff offers nothing but
5   his conclusory self-serving declaration that he practices the
6   Buddhist religion, and more importantly, he offers no statements or
7   other evidence suggesting that any of the defendants knew of his
8   religious beliefs or issued the outgoing mail restriction based on
9   those religious beliefs.   Thus, plaintiff fails to create a
10  material issue of fact regarding the class-based animus required to
11  sustain his section 1985(3) claim.

12      The ODOC Defendants' motion on the section 1985(3) claims
13  should be granted.

14      C.  Retaliation Claim

15      Plaintiff alleges that his transfer to OSCI on June 25, 2008,
16  was in retaliation for plaintiff's exercise of his First Amendment
17  right to send mail.  As I understand his claim, he contends that in
18  retaliation for sending mail to Seltzer, the ODOC Defendants
19  transferred him from a minimum security prison to a medium security
20  prison.

21      In the Ninth Circuit, the assertion of a viable First
22  Amendment retaliation claim requires five elements:   (1) an
23  assertion that a state actor took some adverse action against an
24  inmate (2) because of (3) that inmate's protected conduct, and that
25  such action (4) chilled the inmate's exercise of his First
26  Amendment rights, and (5) the action did not reasonably advance a
27  legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559,
28  567-68 (9th Cir. 2005).

22 - FINDINGS & RECOMMENDATION

1       Plaintiff appears to bring this claim only against Wright,
2   although that is not entirely clear from his Amended Complaint or
3   his response to the summary judgment motion.  Regardless, the ODOC
4   Defendants contend that even if plaintiff asserts a legitimate
5   protected activity, which the ODOC Defendants do not concede, his
6   claim fails because he cannot show that the prison officials'
7   decision to transfer him was for an improper, retaliatory purpose.
8   That is, he cannot demonstrate that the ODOC Defendants' actions
9   did not advance legitimate goals or were not properly tailored to
10  achieve those goals.

11      The ODOC Defendants contend that plaintiff was transferred
12  because of his need to meet with a BHS specialist to renew and
13  receive anxiety medication.  Wright Declr. at ¶ 8.  Because these
14  needs could not be met at OSPM, he was transferred to OSCI.  Id.
15  Additionally, Wright states that OSCI is a pre-release facility,
16  making it appropriate for plaintiff who had less than four years to
17  his release date.  Id. at ¶ 9.  And, OSCI also has a law library
18  where plaintiff could pursue his legal work.  Id. at ¶ 10.
19  Transferring plaintiff to OSP was not an option because of a
20  conflict with another person at that facility.  Id.

21      Based on these statements in Wright's declaration, the ODOC
22  Defendants argue that plaintiff cannot show that the move was done
23  for a retaliatory purpose.  Addressing an inmate's medical need is
24  a valid penological reason to transfer an inmate from one facility
25  to another and thus, they argue, plaintiff cannot succeed on this
26  claim.

27      In response, plaintiff denies that he ever asked Wright for
28  help with mental health issues.  Pltf's Declr. at ¶ 16.  He states

23 - FINDINGS & RECOMMENDATION

that at all times relevant to this action, he was not prescribed narcotic medication for anxiety. Id. at ¶¶ 33, 42. He further states that Wright told plaintiff that if plaintiff did not drop his civil action against Seltzer, Wright was going to punish him. Id. at ¶ 18; see also Id. at ¶ 21 (Wright threatened to punish me if I continued to send Seltzer legal mail and if I did not cease my litigation against Seltzer).

Additionally, plaintiff states that Wright's statement regarding plaintiff having a conflict with a person at OSP, is not true. Id. at ¶ 22. As support for this statement, plaintiff states that inmate conflicts are documented on "AS400," part of the ODOC computer system. Id. at ¶ 23. He states that the only conflict for plaintiff in the AS400 at the relevant time was with inmate Steve Tryon at SRCI. Id. Finally, plaintiff notes that the timing of Wright's transferring plaintiff to OSCI suggests retaliation and punishment for plaintiff's continuing to send legal mail and litigating against Seltzer.

In reply, the ODOC Defendants argue that plaintiff has failed to create a material issue of fact on the issue of whether defendants would have reached the decision to transfer plaintiff in the absence of his protected conduct. Defts' Reply at pp. 5-6. The ODOC Defendants contend that plaintiff proffers nothing to suggest that Wright transferred him because he engaged in protected conduct and that the action did not advance a legitimate correctional goal. Thus, they contend, plaintiff fails to meet his burden of sustaining this claim.

I disagree. Wright offers three reasons for the transfer which, if proven, would meet the standard of advancing a legitimate

24 - FINDINGS & RECOMMENDATION

penological goal: (1) access to needed medical services; (2) preparation for release; and (3) access to a law library. In addition, he states that a transfer to OSP was not an option because of a conflict. In support of his statements, Wright submits no documentation of plaintiff's alleged mental health issues, no documentation of his request to see a BHS specialist, and no documentation of the type of medication plaintiff was taking.[2] Plaintiff describes that requests for appointments with BHS specialists are made by written kyte. Wright states that plaintiff made the request to see one; plaintiff states he did not. This is a classic conflict of evidence that cannot be resolved on summary judgment. Additionally, Wright fails to explain how plaintiff, who had been housed in OSPM for at least four months prior to his transfer, had been able to receive a prescription for the medication that OSPM staff allegedly cannot prescribe and which plaintiff was requesting be renewed.

Wright further fails to support his statement that the transfer was appropriate because OSCI is a pre-release facility and plaintiff had fewer than four years left on his sentence. Wright submits no ODOC policy explaining any type of pre-release transfer authorized by ODOC. He describes no established practice that

---

[2] Wright submits a copy of the transfer authorization. Attchmt 2 to Wright Declr. It is dated June 21, 2010. The entry for "Type/Reason" states "TRAN MEDI." No explanation of the abbreviations is given. Even assuming "MEDI" means medical, this does not, by itself, negate plaintiff's testimony that Wright allegedly told plaintiff he would punish him for his continued mail and litigation against Seltzer, and it does not explain, without more, the basis behind any medically-related transfer and why it was justified.

25 - FINDINGS & RECOMMENDATION

1   would suggest that an inmate with between three and four years on

2   a sentence is considered appropriate for transfer to a pre-release

3   facility.

4   Additionally, as to the law library, while Wright states that

5   OSCI had a law library allowing plaintiff to pursue his legal work,

6   he does not state that OSPM lacks one. Furthermore, while Wright

7   offers a reason why plaintiff could not be transferred to OSP, this

8   does not explain why a transfer was justified in the first place,

9   and, plaintiff creates an issue of fact regarding Wright's

10  statements because, as plaintiff states, he had no conflicts with

11  anyone at OSP at the time, and Wright fails to submit any record

12  showing plaintiff's conflicts which plaintiff says should be

13  available in the ODOC computer system. Finally, the ODOC

14  Defendants fail to even address plaintiff's allegations that Wright

15  threatened him with punishment for sending mail to Seltzer.

16  Plaintiff's declaration creates an issue of fact as to

17  Wright's motive, sufficient to defeat the ODOC Defendants' summary

18  judgment motion on this claim. Because the ODOC Defendants make no

19  argument on the other elements of the claim, I do not consider

20  them. It should be clear, however, from the discussion above, that

21  contrary to the ODOC Defendants' assertion, plaintiff does have a

22  First Amendment right to send mail to Seltzer and this is a

23  sufficient basis upon which plaintiff may base this claim. While

24  the outgoing mail restriction did not infringe his First Amendment

25  rights, he nonetheless may not be retaliated against for his

26  attempts to exercise his rights. See Pratt v. Rowland, 65 F.3d

27  802, 807 (9th Cir. 1995) (while a prisoner has no constitutionally

28  protected liberty interest in being held in a given facility, the

26 - FINDINGS & RECOMMENDATION

1  prisoner nonetheless possesses the right not to be transferred in
2  retaliation for his exercise of protected First Amendment rights).

3      Furthermore, the ODOC Defendants are not entitled to qualified
4  immunity on the retaliation claim.  "'[T]he prohibition against
5  retaliatory punishment is clearly established law in the Ninth
6  Circuit, for qualified immunity purposes.'"  Rhodes, 408 F.3d at
7  569 (quoting Pratt, 65 F.3d at 806).

8      D.  State Law Claims

9      The Oregon Tort Claims Act (OTCA) provides that the sole cause
10 of action for any tort of officers, employees, or agents of a
11 public body acting within the scope of their employment or duties,
12 shall be an action against the public body only.  Or. Rev. Stat. §
13 (O.R.S.) 30.265.  No other form of civil action or suit is allowed.
14 In an action against a state employee, the state is substituted as
15 the only defendant.  Id.

16     "The Eleventh Amendment bars suits against a state or its
17 agencies, regardless of the relief sought, unless the state
18 unequivocally consents to a waiver of its immunity." Yakama Indian
19 Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th
20 Cir. 1999).  "Although the State of Oregon has consented to be sued
21 in Oregon courts for the torts committed by its employees,
22 officers, or agents while acting within the course and scope of
23 their employment under the OTCA, it has not consented to be sued in
24 federal courts for those torts." Blair v. Toran, No. CV-99-956-ST,
25 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), aff'd, No. 00-35035,
26 12 Fed. Appx. 604 (9th Cir. June 25, 2001).

27     Based on the Eleventh Amendment, all of plaintiff's state
28 claims against the individually named ODOC Defendants are barred

27 - FINDINGS & RECOMMENDATION

1   because, as above, under the OTCA, the State of Oregon is
2   substituted as the proper defendant in those claims and plaintiff
3   may not sue the State of Oregon in federal court.

4        Additionally, to the extent plaintiff attempts to bring claims
5   directly under the Oregon Constitution, such claims should be
6   dismissed because plaintiff has no private right of action directly
7   under the Oregon constitution. Hunter v. City of Eugene, 309 Or.
8   298, 303-04, 787 P.2d 881, 883-84 (1990).

9        The ODOC Defendants' motion as to the state claims should be
10  granted.

11       E.   Statements Regarding Discovery & Procedural History

12       In his declaration filed in response to the ODOC Defendants'
13  summary judgment motion, plaintiff makes several assertions
14  regarding his inability to conduct full discovery and the
15  "inadequate" time allowed to conduct discovery given that the case
16  was filed less than one year before defendants' motion for summary
17  judgment was filed. Pltf's Declr. at ¶¶ 31, 39. Plaintiff also
18  asserts that the ODOC Defendants did not serve him with an Answer
19  to his original Complaint or his Amended Complaint. Id. at ¶¶ 30,
20  40.

21       The docket shows that on December 5, 2008, Judge Mosman
22  dismissed plaintiff's original Complaint before it was served. The
23  ODOC Defendants were thus not obligated to file an Answer.
24  Plaintiff filed his Amended Complaint on June 23, 2009, and service
25  on the ODOC Defendants was waived on September 21, 2009 (docket
26  #19), following Judge Mosman's August 18, 2009 Order dismissing
27  some claims and one ODOC Defendant, and authorizing service on the
28  remaining defendants. The ODOC Defendants filed an Answer on

28 - FINDINGS & RECOMMENDATION

October 12, 2009 (docket #20). The Certificate of Service appended to the Answer shows service on plaintiff by mail at OSCI on October 12, 2009 (docket #25). On October 29, 2009, the Court received a notice from plaintiff, dated October 20, 2009, of a change of address to a street address in Portland upon his release from prison (docket #26). Thus, the ODOC Defendants properly sent a copy of their Answer to plaintiff at OSCI, plaintiff's address on record in this litigation at the time the Answer was mailed.

As to the argument that plaintiff has been unable to engage in discovery, I note that the case was originally filed in 2008, and after the initial dismissal in December 2008, plaintiff did not file an Amended Complaint until late June 2009. The ODOC Defendants timely filed their Answer in October 2009 after waiving service.

The Court then issued a Scheduling Order on November 30, 2009 (docket #28). The Order allowed sixty days for the completion of discovery and to file dispositive motions. Notably, at this time, plaintiff was not incarcerated. A subsequent Scheduling Order, dated January 29, 2010, extended the discovery deadline to April 2, 2010 (docket #34). Thus, plaintiff had more than nine months from the time his Amended Complaint was filed in June 2009, had more than seven months from Judge Mosman's August 18, 2009 Order allowing part of plaintiff's action to proceed, and had more than six months from the time the ODOC Defendants waived service on September 21, 2009, in which to conduct discovery. Importantly, the record shows that plaintiff was not incarcerated from mid-October 2009 to sometime in February 2010, Pltf's Declr. at ¶ 31, negating plaintiff's argument that the prison setting was an

29 - FINDINGS & RECOMMENDATION

1   impediment to conducting discovery during the discovery period.

2       Additionally, the docket shows that the ODOC Defendants
3   sought, and were granted, an extension of time to file dispositive
4   motions up to July 2, 2010.  During this time, plaintiff never
5   notified the Court in any manner of any problems he had encountered
6   in obtaining discovery.  In his motion for extension of time to
7   respond to the ODOC Defendants' summary judgment motion (docket
8   #53), plaintiff cited a delay in receiving the motion and limited
9   access to the prison law library as the basis for the motion, but
10  did not mention any discovery issues.

11      As the recitation of the history of this case shows,
12  plaintiff's assertions regarding an inability to conduct discovery
13  are unfounded.

14                            CONCLUSION

15      Seltzer's motion for summary judgment [46] should be granted
16  in its entirety.  The ODOC Defendants' motion for summary judgment
17  [80] should be granted except as to plaintiff's First Amendment
18  retaliation claim.

19                         SCHEDULING ORDER

20      The Findings and Recommendation will be referred to a district
21  judge.  Objections, if any, are due February 7, 2011.  If no
22  objections are filed, then the Findings and Recommendation will go
23  under advisement on that date.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

30 - FINDINGS & RECOMMENDATION

1    If objections are filed, then a response is due February 24,

2    2011.   When  the  response  is  due  or  filed,  whichever  date  is

3    earlier, the Findings and Recommendation will go under advisement.

4    IT IS SO ORDERED.

5                    Dated this 18th  day of January , 2011.

6

7                                    /s/ Dennis J. Hubel

8                                    _____

9                                    Dennis James Hubel
                                     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31 - FINDINGS & RECOMMENDATION